UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK JOHN MCERLAIN, | No. C 13-03232 MMC (LB) |
| Plaintiff, | **ORDER REGARDING JOINT DISCOVERY DISPUTE LETTER FILED ON DECEMBER 10, 2013** |
| v. | |
| PARK PLAZA TOWERS OWNERS ASSOCIATION, et al., | [Re: ECF No. 48] |
| Defendants. | |

## INTRODUCTION

The parties dispute whether Plaintiff Nancy McErlain may subpoena certain documents from third-party Coldwell Banker about a defendant in her son's related case. *See* Joint Letter Brief, ECF No. 48. Based on the parties' joint letter brief and their arguments at the hearing on December 19, 2013, the court holds that the certain of the information sought is relevant. The court orders production of the disclosure statement, the agency agreement, and the listing agreement, subject to the privilege review discussed below.

## STATEMENT

Park Plaza Towers, located at 110 Park Road in Burlingame, California, is a six-story condominium community comprised of 45 condominium units. The common areas of the Property, is under the control of the Park Plaza Towers Owners Association (the "Association"), by and through its Board of Directors. The Association (including its Board and members) are governed by

ORDER (C13-03232 MMC (LB))

the Association's governing documents, including its Covenants, Conditions and Restrictions ("CC&Rs")

Patrick McErlain, who has been diagnosed with bipolar disorder, lives at Park Plaza Towers in a unit owned by his mother, Nancy McErlain. In this action, *McErlain v. Park Plaza Towers Owners Association*, No. C13-03232 MMC (LB) the "3232 Action"), he has sued the Association, the property manager (David Behling), the property management company (Behling Property Management Corp.), and 10 building residents—including Julie Robles—who may or may not be members of the Association's Board of Directors (collectively, "Defendants"), for disability discrimination in violation of federal and state law. Essentially, he alleges that Defendants have tried to get him to move out of the Park Plaza Towers by actively engaging in disparaging, mocking and assaultive behavior toward him, encouraging such behavior, or failing to restrain such behavior. *See generally* First Amended Complaint, 3232 Action, ECF No. 3.

Mr. McErlain's mother, Nancy McErlain, also has sued some of Defendants. In her action, *McErlain v. Park Plaza Towers Owners Association*, No. C13-04384 MMC (LB) (the "4384 Action"), she has sued the Association, Mr. Behling, and Behling Property Management Corp. for disability discrimination and for breach of the CC&Rs. *See generally* Complaint, 4384 Action, ECF No. 1.

On November 11, 2013, Ms. McErlain served Coldwell Banker, a non-party to this action, with a document subpoena. 12/10/2013 Letter, ECF No. 48 at 1. Ms. McErlain wants Coldwell Banker to produce documents between Julie Robles, who formerly owned a condominium unit in the Park Plaza Towers and who is a defendant in the 3232 Action, and Coldwell Banker, which served as her real estate broker/agent concerning the sale of her unit. *Id.* Specifically, Ms. McErlain's subpoena to Coldwell Banker requests Coldwell Banker's "entire file containing all correspondence and emails between real estate agent Thomas Neel and anyone else affiliated with Coldwell Banker and Julie R. Robles and anyone else concerning the listing and sale of the property located at 110 Park Road, No. 102, Burlingame, CA 94010, including your listing agreement with Julie R. Robles, the sales contract, disclosures, and all sales related documents from the beginning to the present." *Id.*

On November 21, 2013, Defendants filed, in the 3232 Action (which is Mr. McErlain's action) a

1  motion to quash Ms. McErlain's subpoena. Motion to Quash, ECF No. 37. But because Ms.
2  McErlain, rather than Mr. McErlain, served the subpoena, the subpoena presumably relates to the
3  4384 Action. Thus, Defendants should have filed their motion to quash in the 4384 Action, not the
4  3232 Action. The district referred the motion to the undersigned for resolution, and the undersigned
5  promptly dismissed the motion without prejudice and ordered the parties to comply the procedures
6  for resolving discovery disputes that are outlined in the undersigned's standing order. 12/4/2013
7  Order, ECF No. 47. Those procedures allow parties to file joint discovery dispute letters, rather than
8  discovery motions.

9  On December 10, 2013, Ms. McErlain and Defendants filed a joint letter in the 3232 Action.
10 12/10/2013 Letter, ECF No. 48. Again, it should have been filed in the 4348 action. In it,
11 Defendants ask the court to quash the subpoena because it seeks information that is irrelevant to the
12 claims and defenses in this action and because it seeks communications that are protected by the
13 attorney-client privilege and thus is overbroad. *Id.* at 2.

14 At the December 19, 2013 hearing, Ms. McErlain limited her request to the disclosure statement,
15 the agency agreement, and the listing agreement only.

16 **ANALYSIS**

17 **I. LEGAL STANDARD**

18   **A. Standing and Rule 45 Subpoenas**

19 "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a
20 party to the action, unless the objecting party claims some personal right or privilege with regard to
21 the documents sought." 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE &
22 PROCEDURE § 2459 (3d ed. 2008); *see also Crispin v. Christian Audigier, Inc.,* No. CV 09–09509
23 MMM (JEMx), 2010 WL 2293238, at *5 (C.D. Cal. May 26, 2010) (quoting Wright & Miller and
24 providing additional citations).

25   **B. Scope of Rule 45 Discovery**

26 Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. The scope of
27 the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under
28 Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a

ORDER (C13-03232 MMC (LB))

1 subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a)
2 ("A party may serve on any other party a request within the scope of Rule 26(b)."). Unless
3 otherwise limited by court order, Rule 26(b) allows a party to obtain discovery concerning "any
4 nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This
5 includes "the identity and location of persons who know of any discoverable matter." *Id.* "Relevant
6 information need not be admissible at the trial if the discovery appears reasonably calculated to lead
7 to the discovery of admissible evidence." *Id.*

8 A court must protect a nonparty subject to a subpoena if a subpoena "requires disclosure of
9 privileged or other protected matter" or the subpoena "subjects a person to undue burden." Fed. R.
10 Civ. P. 45(c)(3). A court must also limit discovery if it is unreasonably duplicative, if it can be
11 obtained from a source that is more convenient or less burdensome, or if the burden of producing it
12 outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C). Moreover, upon motion from a party who
13 certifies that they have conferred in good faith with the opposing party, a court may also "issue an
14 order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or
15 expense[.]" Fed. R. Civ. P. 26(c). The issuing court also may quash a subpoena if it determines that
16 the subpoena requires disclosure of "a trade secret or other confidential research, development, or
17 commercial information." Fed. R. Civ. P. 45(c)(3(B).

18 "On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule
19 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant."
20 *Chevron Corp. v. Donziger,* 12–MC–80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug.
21 22, 2013) (citing *EON Corp. IP Holdings, LLC v. T–Mobile USA, Inc.,* No. 12–80082 LHK (PSG),
22 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012)).

23 **II. APPLICATION**

24 As an initial matter, the court finds that Ms. Robles—but not Defendants as a group—has
25 standing to ask the court to quash the subpoena. The documents Ms. McErlain seeks from Coldwell
26 Banker are Ms. Robles's communications with her real estate agent. The court also notes that Ms.
27 McErlain does not contend that Ms. Robles lacks standing here. Accordingly, the court construes
28 the arguments made by Defendants as ones made by Ms. Robles only.

ORDER (C13-03232 MMC (LB))
4

1       As for the substantive arguments, the court first addresses Ms. Robles's privilege argument.  In
2  short, the court finds it unpersuasive.  First, Ms. Robles has provided no reason why these requested
3  communications might include privileged ones.  Rather, in a single sentence, she merely says that
4  the subpoena asks for communications from "anyone" that are in the "entire file," and those
5  communications "could" include privileged ones.  Second, even if there are privileged
6  communications, and as Ms. McErlain agreed at the hearing, Ms. Robles can withhold any
7  privileged communications and produce a privilege log.
8       And although it is a close call, the court also is not persuaded by Ms. Robles's relevance
9  argument.  It is Ms. McErlain's burden to show relevance, and the court believes that she has, albeit
10 barely.  Ms. McErlain claims, essentially, that the Association, Mr. Behling, and Behling Property
11 Management Corp. discriminated against her son.  She contends that Ms. Robles was one of the
12 residents at the Park Plaza Towers who instigated and carried out discriminatory activity on behalf
13 of the Association's Board of Directors.  12/10/2013 Letter, ECF No. 48 at 3.  She explains that on
14 May 30, 2013, Ms. Robles obtained a restraining order against her son, and Ms. Robles sold her unit
15 shortly thereafter.  *Id.*  She argues that the requested communications are relevant because, for
16 example, "[t]he subpoenaed file should contain a disclosure statement, per Calif. Civil Code section
17 1102, filled out personally by Ms. Robles, in which she discloses 'all known material or significant
18 items affecting the value or desirability of the property.'"  *Id.*  Ms. McErlain "expects" that Ms.
19 Robles filled out the disclosure statement before May 2013, and Ms. McErlain wants to see
20 "[w]hether [Ms.] Robles'[s] descriptions of her situation with [Mr.] McErlain in her disclosure
21 statement differ from those in" her other testimony.  *Id.*  The disclosure statement, she argues, "is
22 relevant not only to [Ms.] Robles'[s] credibility, but also to her motivation in discriminating against
23 [Mr. McErlain], obtaining the restraining order, and sending multiple email and letter reports to the
24 [Association's Board of Directors], the police, fellow neighbors, and the courts about [Mr.
25 McErlain], encouraging them to discipline and/or arrest him."  *Id.*  At the hearing, she also noted
26 that the agency agreement and the listing agreement are relevant to timing.
27       Other than saying that Ms. McErlain's requests have nothing to do with her claims, Ms. Robles
28 makes no real attempt to argue why Ms. McErlain's explanation is not persuasive.  Instead, she

ORDER (C13-03232 MMC (LB))       5

1  asserts that Ms. McErlain's subpoena is a "fishing expedition" that seeks to "punish" and "humilate"
2  her. *Id.* at 2-3.  The court cannot see, however, how the disclosure of some communications relating
3  to the sale of her unit is humiliating or would punish her, and given Ms. McErlain's explanation,
4  also does not believe that the subpoena is merely a "fishing expedition."

5  Accordingly, the court finds that the information requesting by Ms. McErlain's subpoena could
6  lead to the discovery of admissible evidence and denies Ms. Robles's request for an order quashing
7  the subpoena.  As discussed at the hearing, the court limits the discovery to be produced to the
8  disclosure statement, the agency agreement, and the listing agreement.  Coldwell Bankder may
9  produce them through Ms. Robles's counsel, who can conduct a privilege review.  In doing so, she
10 must follow the procedures set forth in the undersigned's standing order.  And if there is private
11 information in the agreements, counsel must meet and confer to see if they can implement a process
12 to protect that information.  Given the agreements are relevant to timing, the court is confident that
13 the parties can address this issue.

## CONCLUSION

15 This disposes of ECF No. 48.

16 **IT IS SO ORDERED.**

17 Dated: December 19, 2013

18 _____
   LAUREL BEELER
   United States Magistrate Judge